NO. 7933.

EUREKA HOMESTEAD SOCIETY

VS

NATIONAL SURETY COMPANY.

STATE OF LOUISIANA

COURT OF APPEAL

PARISH OF ORLEANS

By his Honor John St. Paul.

This is a suit by an owner against the surety on a building contractor's bond. The contractor agreed to build a house for $4100, payable in five instalments of $820. each as the work progressed. After the first instalment had become due and been paid, "a heavy windstorm blew down the skeleton frame superstructure which was the only completed work at the time." Thereupon the contractor at first promised to recommence the work, but nevertheless did not do so; and the work was then done by the owner at (substantially) the price agreed upon, that is to say for $3900; exclusive however of the $820 already paid. Whereupon the owner now seeks the return of the aforesaid $820 paid to the alleged defaulting contractor.

I.

In Industrial Homestead vs Junker, No. 7402 of our docket, and in Levy vs Paquette, 144 La 244, it was held that where the work was paid for as it progressed and a part of the work (completed and paid for) was destroyed by accident before the completion of the whole, the loss must fall upon the owner.

The doctrine in those cases is not questioned, but it is contended that in this case the contract between

the parties provided otherwise ; to wit, that the work should be at the risk of the contractor until accepted as a whole. The clause relied upon reads as follows;

"I (the contractor) also agree to take out Insurance x x x on said works and to keep the same fully insured, at my expense, up to the final delivery of said works and their acceptance by you: and at the time when the above payments are made to me I will transfer an amount of said insurance corresponding with the amount of the payment then made, to indemnify you (the owner) from loss in the event of fire before delivery to you of the works complete; it being understood that the works shall be at my risk until accepted by you as a whole."

Now it is clear that if the works had been destroyed by fire instead of by storm (or if there had been storm insurance on the works) the above clause would have needed no interpretation. For the insurance having been transferred *pro tanto* as the payments were made, it is clear that the contractor was no longer protected, having been divested of his interest in the policy; and it is equally clear that the owner was not protected <u>for want of insurable</u> interest, unless the works were at his #### (the owners)

risk; For it cannot be pretended that the owner was entitled both to collect insurance money and also to demand replacement by the contractor. Hence follows one of two things; either the insurance was for the benefit of the contractor who alone could suffer loss, or else it was for the benefit of the owner because the work stood at his risk. To this it is said, that the transfer of insurance was only "additional security"; but the contract says the contrary, viz, "to indemnify you (the owner) from loss by fire." Moreover it is difficult to see wherein the security could consist, if the contractor were entitled to the insurance when collected by the owner.

The fact is that there is simply a conflict between the first part of the clause, which clearly contemplates that the completed parts shall be at the risk of the owner and protected by insurance in his (the owner's) name, and the second part of the clause saying that the work shall be at the contractor's risk until completed.

Under the circumstances the conflict must be resolved against the plaintiff; for although in form the contract purports to emanate from the contractor, nevertheless it shows on its face that it was wholly prepared and confected by plaintiff. C. C. 1958.

The simple truth is that the parties did not think of, and provide for, storm insurance. Hence the loss must fall where both law and nature place it, that is to say upon him to whom the property belongs unless it be clearly shown that it must fall on another; and we find no such showing here.

## II.

Apart from this our reading of the record convinces us that the plans and specifications under which the house was actually built were so materially altered, without the consent of the surety, as to discharge him in any event. Plaintiff's own inspector testifies that roof, foundation, and structure generally, were all changed materially, the building being constructed under "revised" plans; so much so that "it wasn't the same house."

It is claimed that the changes were simply "extra work", covered by the original contract; but the doctrine that slight changes in a building contract, which do not increase the surety's risk or liability, do not discharge the surety, can not apply "where the change in the contract was so important as to constitute a new and independent contract". Ketteringham vs Eureka Homestead 140 La 176 (179)

The judgment appealed from is therefore reversed and it is now ordered that plaintiff's demand be rejected at its cost in both courts.